Joseph B. Weinberger, Esq.  (CASBN: 136798)
**WEINBERGER LAW FIRM**
1839 Iron Point Drive, Ste. 180
Folsom, CA  95630
Tel: (916) 357-6767
Fax: (916) 357-6766
joe@weinbergerlaw.net

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKS BRIDGES and ANITA STENGEL, )<br><br>                    Plaintiffs,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, DAWN<br>WALKER, JENNIFER LAMB,<br>SACRAMENTO SHERIFF'S<br>DEPARTMENT OFFICER MA, and DOES 1<br>through 50, inclusive,<br><br>                    Defendant<br>_____ | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>Claim 1 – 42 USC §1983 Unlawful Seizure<br><br>Claim 2 – 42 USC §1983 Breach of Familial<br>Relationship<br><br>Claim 3 – Monell Related Claims<br><br>Claim 4 – Declaratory Relief |

1.     Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the

deprivation by Defendants, at all times herein acting under color of state law, of rights secured to

Plaintiffs under the United States Constitution, including the Fourth and Fourteenth

Amendments, and under federal law, including 42 USC §671(a)(16).

2.     Venue properly lies in the Eastern District of California, in that the events and

circumstances  herein alleged occurred in the County of Sacramento, and Plaintiffs and at least

one Defendant resides in the County of Sacramento.

## PARTIES

**Plaintiffs**

3.     Plaintiffs BROOKS BRIDGES (herein "BROOKS") and ANITA STENGEL (herein "ANITA"), were at all times relevant to the facts and circumstances herein individuals residing in the County of Sacramento and sharing a residence with their biological children.  BROOKS and ANITA are collectively referred to herein as "Plaintiffs."

4.     Plaintiffs are the biological parents of AB and KB.  In order to protect the child's privacy, it is Plaintiff's intent to use initials for the designation of the children unless and until such time the Court orders otherwise.

5.     At all times relevant herein, prior to the removal of AB and KB from their parents care by Defendants described below, Plaintiffs raised, nurtured, provided guidance, and cared for their children, and enjoyed the company, companionship and society of their children, and all other benefits and burdens of their rights of familial association with AB and KB.

**County of Sacramento Defendant (DHHS and Sheriff's Department)**

6.     Defendant County of Sacramento (herein "COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunit thereof the DEPARTMENT OF HEALTH AND HUMAN SERVICES (herein "DHHS")  DHHS has an administrative and operational subdivision known as Child Protective Services ("CPS").

7.     COUNTY also has as an administrative law enforcement subunit thereof, the SACRAMENTO COUNTY SHERIFFS DEPARTMENT (hereinafter "SCSD").

8.     All are part of the governmental entity referred to above as COUNTY for all purposes, though at any time one of the more specific identities (DHHS, CPS, SCSD) may be used as

appropriate in the context of the allegations contain in this complaint.  Primarily COUNTY will be referenced.

**County of Sacramento Monell Liability**

9.     DHHS and CPS as COUNTY governmental agency organized subdivisions existing pursuant to the laws, regulations and policies of Defendant COUNTY, did together with COUNTY promulgate, encourage, ratify, condone, and/or permit without remediation, the policies, patterns, and practices/customs pursuant to which the individual Defendants, and Does 1- 50, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or practices, and/or failure to train, whether or not promulgated in written form, condoned, ratified, and ignored without remediation or any nature the unlawful conduct of the COUNTY employee-defendants named individually as Defendants herein.

10.     As the employer of social workers, their supervisors and sheriff's deputies, COUNTY had primary responsibility for the training, education, and supervision of the social workers, emergency response workers, supervisors, program managers, sheriffs, and all other COUNTY DHHS and/or CPS and SCSD personnel.

11.     Plaintiffs contend that the policies, practices and procedures of COUNTY aforesaid and as noted herein below, inclusive of the warrantless entry and search of their home and the removal of the minor children based upon false and fabricated statements in the warrant application, constitute a basis for governmental liability in this case pursuant to the Monell theory of liability.

12.     The unlawfulness and moving force of such policies, procedures, practices/customs is exacerbated by the fact that COUNTY has failed to train at all and/or failed to train employees adequately on state and federal laws and statutes implicated in the context of a child

abuse/neglect investigation, and therefore Plaintiffs seek to hold the COUNTY responsible in whole or in part for the conduct of the individual employee-defendants named herein below.

13.     Plaintiffs further contend that an additional pattern, practice, or custom of DHHS/CPS and SCSD, for which COUNTY should be held liable for pursuant to Monell, are the 4th Amendment violations by defendants occasioned by the entry in the Plaintiffs home as described herein below.

**Individual County of Sacramento Defendants**

14.     Defendant DAWN WALKER (herein "WALKER") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiff's information and belief, a case worker and/or emergency response worker employed by County.

15.     Defendant JENNIFER LAMB (herein "LAMB") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiff's information and belief, a case worker and/or emergency response worker employed by County.

16.     Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 50, and for that reason have sued such Defendants under fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to identify said Defendants when their identities are ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

17.     Plaintiffs are informed and believe and on such basis allege that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and

that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants, and each of them, agreed upon, approved, ratified, and/or conspired to commit all of the acts and/or omissions alleged in this Complaint.

## COMMON ALLEGATIONS

18.     On or about November 2, 2016, Dawn Walker interviewed AB regarding allegations that her father was abusive.  AB denied this being true.  AB told Ms. Walker that she was watching television on the couch in the living room when she fell asleep.  AB was woken by her father whereupon she became argumentative with her father.  She further indicated that she used foul language when addressing her father.  AB then took an aggressive stance and her father grabbed her wrist.  AB then went limp and fell to the couch and then the floor.  AB stated that her father restrained her until she calmed down.

19.     At the time of this meeting, Dawn Walker knew or should have known that the actions as described by AB did not constitute abuse or otherwise constitute sufficient facts to remove the child from the care of her parents.

20.     On or about November 2, 2016, Dawn Walker traveled to Pasadena Elementary School for the purpose of attempting to interview five (5) year old KB.  Ms. Walker did not have any facts or information that any improper action had been taken by either parent against KB.  Dawn Walker did not have a warrant to enter the premises, detain KB from her school, had not received permission from anyone to interview KB and had not basis to detain KB.  Despite such lack of authority, Dawn Walker directed school officials to remove KB from her classroom.

21.     At this time, despite the fact that Dawn Walker was a total stranger to KB and despite the fact that KB was five (5) years old and lacked the mental ability to make a rationale decision, Dawn Walker determined that KB had the mental faculties to decline the presence of school officials to act as parents patriae on her behalf.

22.     At this interview KB acknowledged that she has adequate food shelter and clothing.  KB denied ever being physically assaulted by either of her parents.

23.     Dawn Walker thereafter determined that a sexual abuse assessment was appropriate with this five (5) year old child.  This was despite the fact that there were no other adults present and that Dawn Walker lacked adequate training and skill to conduct such an evaluation.  In addition, Dawn Walker had absolutely no facts, basis, information or belief that any sexual abuse had occurred.  Dawn Walker thereafter provided leading questions to KB which allegedly resulted in allegations of sexual abuse against Plaintiff Brooks Bridges.

24.     No other person heard such allegations due to the fact that Dawn Walker had chosen to conduct such improper interview and investigation in the absence of any corroborating witnesses.

25.     After the conclusion of this alleged interview and alleged admission, Dawn Walker collaborated with her supervisor Jennifer Lamb.  At this time, given the lack of any corroborating witness it was determined to refer the matter to law enforcement to obtain a statement.

26.     Officer Dominguez arrived at the school to interview the child.  At this time, the child denied that there had been any sexual abuse of any type or nature.  The officer advised that the child would not be taken into custody.

27.     Unsatisfied with the determination of the Officer, Jennifer Lamb and Dawn Walker decided that the Plaintiffs Brooks Bridges and Anita Stengel would be interviewed at their home. Upon arrival at the home, Dawn Walker observed that there were no safety concerns in the home.  Mr. Bridges stated that AB fell asleep on the couch and that he properly disciplined her. There was no abuse and there was no injury to AB.

28.     The plaintiffs offered that the children are disciplined through the loss of privileges, that the children are covered by private health insurance and that there are no drug, alcohol, criminal history or guns and weapons issues in the home.  Mr. Bridges further offered that the has a degenerative spinal disorder as a result of spinal stenosis, bone spurs and sciatica which makes his movements difficult and painful.

29.     At the conclusion of the interview, Dawn Walker insisted that the parents sign a written safety plan.  The parents refused to be forced to sign any document that the social worker offered.  The parents did agree to attend a Team Decision Making meeting.

30.     On or about November 2, 2016, Dawn Walker and Jennifer Lamb requested the assistance of police officers to accompany them to the Bridges home.  While at the home, they perpetuated false sexual abuse allegations that Dawn Walker fabricated.  Based on these false statements, Defendants, and each of them threatened Mr. Bridges and Mrs. STENGEL.  They stated that they only had two choices, either Mother take the kids and remain out of the home until the SAFE interview was completed, or Father would need to leave the home and have no contact wit the children until the interview was completed.  Implied in the threat was that if the parents were unwilling to cooperate as referenced, the police who had accompanied the social workers would forcibly remove the children.

31.     Faced with the hobsons choice, Mr. Bridges agreed to leave the home.  Neither Walker nor Lamb had legally sufficient facts or circumstances to require Mr. Bridges to leave the home. Walker and Lamb were able to force this decision by having law enforcement officers present when presenting this ultimatum.  There was no basis or need for a police presence at this time other than as a show of force to compel Plaintiffs to comply with Defendants illegal demand.

32.     On or about November 7, 2016, Dawn Walker and Jennifer Lamb held a SAFE Interview of KB.  At this time, there were no disclosures of any type of sexual abuse of the child.

33.     On or about November 8, 2016, Anita STENGEL inquired of Dawn Walker regarding the status of her family.  Ms. Walker did not disclose that there was no evidence of sexual abuse. Ms. Walker did not disclose that there was no evidence of any physical abuse.  Instead Ms. Walker stated that she was in the process of scheduling a Team Decision Making meeting for the next week.  Ms. Walker further states that the department is "requesting" that Mr. Bridges remain out of the home until after the meeting took place.  The "request" was communicated as an implied order that if violated would result in the presence of law enforcement to remove the children from the home.

34.     On or about November 15, 2016, a sham Team Decision Making Meeting was held.  In truth and in fact Dawn Walker and Jennifer Lamb had already determined that contrary to the facts, there was no physical abuse, no excessive corporal punishment and as well known to Dawn Walker there was no evidence of sexual abuse.  Despite such knowledge, and despite the absence of any evidence from the SAFE interview, Ms. Walker and Ms. Lamb determined even prior to the TDM,  that the sexual abuse allegations were "to be substantiated."

35.     At the TDM, all family members rejected the representations of the social workers.  All family members denied any physical abuse, denied excessive corporal punishment and denied

that anyone, let alone Brooks Bridges had sexually abused KB.  AB was described as being "very disrespectful to everyone in the meeting, siding with her Father and Mother.  She vehemently told the Social Workers that there was no sexual abuse of her sister in the home. Defendants Walker and Lamb, disregarded AB and all facts and circumstances and instead chose to continue the fraud of Defendant Walker.

36.     From on or about November 8, 2016 through and including November 23, 2016, Plaintiffs complied with all demands, including illegal demands of the social workers in an effort to protect their children.  Despite such actions, on or about November 23, 2016, Defendant Walker prepared and submitted a false and fraudulent Application and Declaration in Support of Protective Custody Warrant.

37.     Plaintiffs are informed and believe and thereon allege that on or about November 23, 2016, WALKER and LAMB unlawfully obtained a Warrant to remove A.B. and K.B. from the custody and control of their parents, based on knowingly false testimony, and detained the children in Foster Care.

38.     Plaintiffs are informed and believe that, the SOCIAL WORKER DEFENDANTS knowingly and intentionally provided the magistrate or judge with the necessary false information to obtain the warrant, and are also the ones who executed the warrant in spite of the fact that they knew the warrant was improperly obtained based on false testimony.  When a social worker serves as a complaining witness and as the executing officer, they are not merely directed to fulfill the order of the court; they are also in a position to control the flow of information to the magistrate or judge upon which probable cause determinations are made. Plaintiffs are informed and believe that, the affidavit submitted by the SOCIAL WORKER DEFENDANTS to obtain the Warrant to detain A.B. and K.B. contained statements, regarding

Plaintiff BROOK BRIDGES and ANITA STENGEL, that were deliberately false or were made in reckless disregard of the truth.  Plaintiffs are informed and believe that, the magistrate or judge who issued the Warrant was misled by the information contained in the affidavit; and, that the affiant knew the information was false or would have known was false except for their reckless disregard of the truth.  Plaintiffs are informed and believe that, if these false statements are excised and removed from the submitted affidavit the remaining contents of the affidavit are insufficient to support the issuance of the warrant.

39.     Plaintiffs are informed and believe that, SOCIAL WORKER DEFENDANTS made and continued to make false statements about BROOKS BRIDGES and ANITA STENGEL in an unlawful attempt to support their unlawful seizure and continued detention of A.B. and K.B. These actions by the SOCIAL WORKER DEFENDANTS continued until DCFS's jurisdiction was finally terminated on February 15, 2017.

## FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) COUNT ONE (UNLAWFUL SEIZURE)

40.     Plaintiffs reallege, and incorporate herein as if set forth in full, paragraphs 1 through 39.

41.     Under the circumstances of this case, outlined above, Plaintiffs A.B. and K.B. had the right to be free from unreasonable seizure under the Fourth Amendment of the Constitution of the United States, which right is "clearly established" such that a reasonable social worker in Defendants' situation would know it is wrong to interfere in a child's right to remain with their father in the absence of exigent circumstances.  BROOKS BRIDGES and ANITA STENGEL, as the parents of minors A.B. and K.B., may maintain an injury to their children caused by the unlawful seizure.

42.   Plaintiffs are informed and believe that, the issuance of the Warrant to detain A.B. and K.B. from Parents was not justified, due to false statements or statements made with disregard of the truth contained within the affidavit to secure such warrant.

43.   The SOCIAL WORKER DEFENDANTS and DOES 1 through 50, inclusive, and each of them, acting under color of law, agreed, and/or conspired to unlawfully seize and detain minor Plaintiffs A.B. and K.B. from the care of their father (BROOKS BRIDGES AND ANITA STENGEL).

44.   SOCIAL WORKER DEFENDANTS WALKER and LAMB, and DOES' 1 through 50, inclusive, conduct was without proper justification or authority, and without probable cause, consent, exigency, or court order. (See Mabe v. County of San Bernardino (2001) 237 F.3d 1101). Further, SOCIAL WORKER DEFENDANTS' WALKER and LAMB, and DOES 1 through 50, inclusive, actions were taken with deliberate indifference to Plaintiff's rights.

45.   SOCIAL WORKER DEFENDANTS, WALKER AND LAMB, and DOES 1 through 50, inclusive, and each of them, conspired to violate the civil rights of the Plaintiffs, including those rights found in the Fourth Amendment of the United States Constitution by, but not limited to, aiding and abetting in the unlawful seizure and detainment of minor Plaintiffs A.B. and K.B., without consent, probable cause, properly obtained warrant, or exigent circumstances, in violation of Plaintiffs' right to be free from unreasonable seizure under the Fourth Amendment, as well as those rights under applicable California law rising to the level of a constitutionally protected right. SOCIAL WORKER DEFENDANTS, acted, or purported to act, in the performance of their official duties.  DEFENDANTS, and each of them, and DOES 1 through 50, inclusive, acted with a common objective.

46.     As a direct and proximate result of SOCIAL WORKER DEFENDANTS' and WALKER and LAMB's actions, Plaintiffs BROOKS BRIDGES and ANITA STENGEL, A.B., and K.B. have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.  Plaintiffs have also incurred, and will continue to incur, attorneys fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

47.     On information and belief, SOCIAL WORKER DEFENDANTS and WALKER AND LAMB engaged in a willful conscious disregard for the probable consequences for injury of the Plaintiffs and  in a despicable, vile, and contemptible manner. Therefore, pursuant to Cal. Civil Code §3294, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing the individual SOCIAL WORKER DEFENDANTS and WALKER AND LAMB,  and to deter them and others from such conduct in the future.

### COUNT TWO (FAMILIAL ASSOCIATION)

48.     Plaintiffs are informed and believe and thereon allege that the right to familial association guaranteed under the Fourteenth Amendment is "clearly established" such that a reasonable social worker in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first properly obtaining a warrant to do so.  In addition, there is a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government such that a reasonable social worker in SOCIAL WORKER DEFENDANTS' situation would know it is unlawful to lie, fabricate evidence, and suppress exculpatory evidence.

49.     Plaintiffs are informed and believe that, the issuance of the Warrant to detain A.B. and K.B. from BROOKS BRIDGES and ANITA STENGEL was not justified, due to false statements or statements made with disregard of the truth contained within the affidavit to secure such warrant.

50.     Commencing on October 28, 2016 and continuing until approximately February15, 2017, SOCIAL WORKER DEFENDANTS, and DOES 1 through 50, inclusive, and each of them, were acting under color of state law when they acted, agreed, and/or conspired to unlawfully remove, detain, question, threaten, examine, investigate, search, and/or falsely report Plaintiffs BROOKS BRIDGES AND ANITA STENGEL, A.B., and K.B..  DEFENDANTS did so without proper justification or authority, and without probable cause, exigency, or court order. (See Mabe v. County of San Bernadino (2001) 237 F.3d 1101).  Further, SOCIAL WORKER DEFENDANTS' actions were undertaken with deliberate indifference to Plaintiffs' rights.

51.     Plaintiffs are informed and believe that, WALKER AND LAMB voluntarily collaborated with and participated in the various actions undertaken by the SOCIAL WORKER DEFENDANTS to ensure the removal of A.B. and K.B. from BROOKS BRIDGES AND ANITA STENGEL.

52.     SOCIAL WORKER DEFENDANTS, WALKER AND LAMB, and DOES 1 through 50, inclusive, and each of them, maliciously conspired to violate the civil rights of the Plaintiffs, including violation of the Plaintiffs' rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain, Plaintiffs' A.B. and K.B. from the care, custody, and control of their father, Plaintiff BROOKS BRIDGES AND ANITA STENGEL RADER, without proper or just cause and/or authority; by subjecting minor Plaintiffs A.B. and K.B. to physical examinations without consent, authority, or

the presence of their father BROOKS BRIDGES AND ANITA STENGEL; by the use of coercion and duress to obtain evidence and testimony; and by maliciously falsifying evidence, and presenting fabricated evidence to the court, and maliciously refusing to provide exculpatory evidence during the pendency of the dependency proceedings in violation of the Constitutional rights of Plaintiffs.

53.     By these actions, SOCIAL WORKER DEFENDANTS and WALKER AND LAMB, and each of them, interfered and/or attempted to interfere with Plaintiffs' constitutional rights to familial association under the Fourteenth Amendment.

54.     As the direct and proximate result of DEFENDANTS and WALKER AND LAMB's actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

55.     On information and belief, SOCIAL WORKER DEFENDANTS, WALKER AND LAMB, and DOES 1 through 50, inclusive, and each of them, acted with malice and with the intent to cause injury to minor the Plaintiffs, or engaged in a willful conscious disregard for the probable consequences for emotion injury of the Plaintiffs and  in a despicable, vile, and contemptible manner. Therefore, pursuant to Cal. Civ. Code §3294, Plaintiffs are entitled to an award of punitive damages only against the individual defendants (as opposed to the agency or municipality) for the purpose of punishing SOCIAL WORKER DEFENDANTS, WALKER AND LAMB, and DOES 1 through 50, inclusive, and to deter them and others from such conduct in the future.

**THIRD CAUSE OF ACTION 42 U.S.C. §1983 - MONELL-RELATED CLAIMS**

56.     Plaintiffs reallege, and incorporate herein as if set forth in full, paragraphs 1 through 55 above.

57.     Defendant COUNTY, including through its entity DCFS, established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those arising under the Fourth and Fourteenth Amendments, by and through, but not limited to, the following policies, practices, customs and/or procedures:

a.     the policy of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious physical injury), court order and/or consent;

b.     the policy of removing children from their family and their homes with an improperly obtained warrant, when no exigency exists;

c.     the policy of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

d.     the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

e.     the policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with the Plaintiffs' rights, including those as to familial relations; and

f.     by acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and

Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

g.      by acting with deliberate indifference in implementing a policy of inadequate supervision, and/or by failing to adequately supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

h.      The policy of making false allegations in a Juvenile Dependency Petitions, i.e. alleging that a parent has failed to protect a child under Welfare and Institutions Code §300(b), where there is no evidentiary basis to support the charge.  On information and belief, plaintiff allege that the above policies and practices are part and parcel of an effort by County to fraudulently boost its intervention statistics in order to obtain greater State and Federal funding for its social services programs.

58.    COUNTY, including by and through its entity DCFS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards with deliberate indifference; and by knowingly, or with deliberate indifference, permitting the SOCIAL WORKER DEFENDANTS, and DOES 1 through 50, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

59.    COUNTY DEFENDANTS knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies and acts as alleged herein, and

that such breaches occurred in contravention of public policy and their legal duties and

obligations to Plaintiffs; and that such policies, practices, customs and procedures were the

moving force behind the constitutional violations alleged herein above.

60.     These actions, and/or inactions, of COUNTY DEFENDANTS are the direct and

proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained

general and special damages, to an extent and in an amount to be proven at trial. In addition,

Plaintiffs have incurred, and will continue to incur, attorneys fees, costs and expenses, including

those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

## FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF

61.     Plaintiffs reallege, and incorporate herein as if set forth in full, paragraphs 1 through 60

above.

62.     As stated herein, Plaintiffs, as citizens and individuals, are protected by the laws of the

State of California, as well as those of the United States Constitution, including the First, Fourth,

and Fourteenth Amendments thereto.

63.     As stated herein above, Plaintiffs are informed and believe that, Defendants COUNTY,

DCFS, and DOES 1 through 50, inclusive, are deliberately indifferent to the known or obvious

consequences of the risks that arise from the absence of express policies  to prevent and prohibit

the practices, procedures, customs, and/or usages of their social workers which include

unconstitutional conduct, i.e. the fabrication of evidence, suppression of exculpatory evidence,

and/or the commission of perjury in juvenile dependency proceedings, as alleged herein above.

Plaintiffs are further informed and believe that the alleged practice of fabrication of evidence,

suppression of exculpatory evidence, and/or the commission of perjury in juvenile dependency

proceedings is so widespread that it may properly be considered the well established custom, practice, and/or usage of the social services agency and as such, have the force of law.

64.     Plaintiffs are informed and believe that, Defendants COUNTY, DCFS, and DOES 1 through 50, failed to implement and provide necessary training for the County employees to ensure that individual County employees are aware that the fabrication of evidence, suppression of exculpatory evidence, and/or the commission of perjury in juvenile dependency proceedings are in violation of the Constitution and California state law.

65.     Defendants COUNTY, DCFS, and DOES 1 through 50, have failed to acknowledge their improper, unlawful and unconstitutional actions, practices, procedures, customs, and/or usages at the time of the incidents at issue in the present action, and  Plaintiffs are informed and believe, and on that basis allege, that presently Defendants COUNTY, DCFS, and DOES 1 through 50, have not changed or modified such actions, conduct and/or policies to conform to law.

66.     Defendants COUNTY, DCFS, and DOES 1 through 50, implementation of unconstitutional polices or failure to promulgate and implement policies and training to prevent the unconstitutional practices alleged above, unless and until enjoined and restrained by order of this court, will cause, and continue to cause, Plaintiffs, and other individuals and citizens to suffer infringement upon their constitutional and state rights.  Infringement of constitutional rights for even minimal periods of time, unquestionably constitutes irreparable injury sufficient to warrant injunctive relief to avoid such injury.  Elrod v. Burns, 427 U.S. 347, 373 (1976).

67.     Without court intervention, Defendants COUNTY, DCFS, and DOES 1 through 50, will continue to act in accordance with said unlawful practices, procedures, customs, and/or usages, and with deliberate indifference to their duties and obligations under state and federal law, including those under the First, Fourth, and Fourteenth amendments as alleged herein above.

68.     Plaintiffs have no adequate remedy at law to prevent or prohibit Defendants COUNTY,

DCFS, and DOES 1 through 50, from continuing, and/or repeating, their unlawful and

unconstitutional practices, procedures, customs, and/or usages other than through injunctive

relief, and therefore seek an order to mandate the formulation and implementation of policies and

training that prevent the fabrication of evidence, suppression of exculpatory evidence, and/or the

commission of perjury in juvenile dependency proceedings.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of action,

as follows:

1.     Plaintiffs demand a jury trial as to the issues so triable;

2.     General damages and special damages according to proof;

3.     Punitive or Exemplary Damages as against only the individual defendants and not any

        municipality, punitive damages as allowed by law;

4.     Attorneys fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5.     Mandatory injunctive relief, both preliminary and permanent, as allowed by law,

        (including preliminary injunctive relief based upon a separate application);

6.     Costs of suit incurred herein; and

7.     Such further relief as the Court deems just and proper.


Dated:  November 14, 2018              **WEINBERGER LAW FIRM**


                                       _____
                                       Joseph B. Weinberger
                                       Attorney for Plaintiff